IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


DIANA CONTRERAS                                              PLAINTIFF


        v.                        CIVIL NO. 11-5066


MICHAEL J. ASTRUE, Commissioner
Social Security Administration                              DEFENDANT


## MEMORANDUM OPINION

        Plaintiff, Diana Contreras,  brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying her claims for a period of disability and disability insurance benefits

(DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI

of the Social Security Act (Act).[1]  In this judicial review, the Court must determine whether there

is substantial evidence in the administrative record to support the Commissioner's decision.  See

42 U.S.C. § 405(g).

I.      **Procedural Background:**

        Plaintiff filed her current applications for DIB and SSI on May 7, 2008, and February 20,

2008, respectively, alleging an inability to work since October 1, 2006, and June 20, 2007,

_____

        [1]The Court notes Plaintiff indicated in her application to proceed *in forma pauperis*
that she received SSI benefits.  (Doc. 3).

respectively, due to a "fractured vertebrae rubbing on talibone/herniated discs.[2]" (Tr. 117, 120,

143).  For DIB purposes, Plaintiff maintained insured status through June, 30, 2007.  (Tr. 49).

An administrative hearing was held on June 2, 2009, at which Plaintiff appeared with counsel

and testified. (Tr. 6-42).

        By written decision dated August 10, 2009, the ALJ found that during the relevant time

period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 52).

Specifically, the ALJ found Plaintiff had the following severe impairments: spondylolithesis of

the back, osteoarthritis, a mood disorder, and a generalized anxiety disorder.  However, after

reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not

meet or equal the level of severity of any impairment listed in the Listing of Impairments found

in Appendix I, Subpart P, Regulation No. 4.  (Tr. 52).  The ALJ found Plaintiff retained the

residual functional capacity (RFC) to:

> lift/carry 10 pounds occasionally, sit for 6 hours and stand/walk 2 hours.  She can
> occasionally climb ladders and scaffolds and crawl.  She can frequently climb
> ramps and stairs, balance, stoop, kneel, and crouch.   She has moderate
> restrictions in maintaining social functioning and concentration, persistence, and
> pace.   She is moderately limited in appropriately responding to usual work
> situations and routine work changes and in appropriately interacting with
> supervisors and co-workers. Moderately limited means there is more than a slight
> limitation, but the person can perform in a satisfactory manner.  She can perform
> work in which interpersonal contact is incidental to the work performed, where
> complexity of tasks is learned and performed by rote with few variables and little
> judgment and where the supervision is simple, direct, and concrete.

(Tr. 53-54).  With the help of a vocational expert, the ALJ determined Plaintiff could perform

---

[2]The ALJ noted Plaintiff filed previous applications for DIB and SSI, January 12,
2005, and April 16, 2007.  (Tr. 49, 102, 106, 109, 112).  At the administrative hearing on
June 2, 2009, the ALJ noted that the onset date of June 20, 2007, would be used because that
was the first day after the most recent unfavorable decision.  (Tr. 15).

AO72A
(Rev. 8/82)

work in assembly production, and as a hand packer/packager.  (Tr. 58).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which after reviewing additional evidence, denied that request on January 14, 2011. (Tr. 1-5). Subsequently, Plaintiff filed this action.  (Doc. 1).  This case is before the undersigned pursuant to the consent of the parties. (Doc. 6).  Both parties have filed appeal briefs, and the case is now ready for decision.  (Docs. 8,9).

## II.    Evidence Presented:

The administrative hearing was held before the ALJ on June 2, 2009.  (Tr. 6-42).  At that time, Plaintiff was  forty-eight years of age.  The record revealed that Plaintiff obtained a high school education and had two years of college education.  (Tr. 147).  The record revealed that Plaintiff's past relevant work consisted of work as a janitor, a convenience store clerk, and a caretaker.  (Tr. 149).

The record revealed that prior to the alleged onset date, Plaintiff was treated for back pain beginning after her involvement in a motor vehicle accident in March of 2004.  (Tr. 215-276). In December of 2004, Dr. Jorge E. Tijmes, diagnosed Plaintiff with low back pain and lumbar spondylolysis.  At that time, Dr. Tijmes opined that Plaintiff was a candidate for a lumbar laminectomy and posterolateral fusion at L5-S1 level. (Tr. 219)  With regard to Plaintiff's back, in May of 2005, Dr. Michael R. Kilgore opined that Plaintiff had the following permanent restrictions: no lifting, pulling, or pushing items over twenty pounds; avoid prolonged periods of standing, sitting and walking; and no bending, stooping, or twisting.  (Tr. 225).  Prior to the relevant time period, Plaintiff was also treated for influenza and swelling of the lower extremities.  (339-345).

-3-

The medical evidence during the relevant time period reflects the following.  On June 18, 2007, Plaintiff, who at that time was an inmate of the McPherson Unit of the Arkansas Department of Correction (ADC), underwent a physical exam performed by Dr. Donald Anderson.  (Tr. 278-284).  At that time, Plaintiff reported she was not taking any medication. Upon examination, Dr. Anderson noted Plaintiff had both a normal physical and mental examination.  Dr. Anderson noted that Plaintiff was obese and deconditioned.  Dr. Anderson opined that Plaintiff should avoid prolonged crawling; and that Plaintiff was restricted from assignments requiring prolonged crawling, stooping, running, jumping, walking, or standing. Dr. Anderson opined that Plaintiff should avoid strenuous activity, and restricted Plaintiff from performing any assignment requiring strenuous physical activity for periods in excess of four hours.

ADC medical notes dated July 7, 2007, report that Plaintiff was seen by the nurse after reporting that she needed a mammogram. (Tr. 290-291).  The nurse noted no abnormal findings at that time, and told Plaintiff that she would be seen by a physician at some point.

ADC medical notes dated October 10, 2007, report that Plaintiff was seen by a nurse to undergo a pap exam.  (Tr. 297, 303-308).  Plaintiff reported no problems at that time, but noted irregular periods and hot flashes since May.

ADC medical notes dated November 7, 2007, report that Plaintiff was seen by Dr. Larry Bowler after complaining of swelling and discomfort in her lower extremities. (Tr. 296).  Upon examination, Dr. Bowler noted Plaintiff's knees and lower extremities were without swelling or deformity.  Plaintiff was diagnosed with obesity, and knee strain secondary to poor fitness. Plaintiff was prescribed Ibuprofen.

-4-

ADC medical notes dated December 13, 2007, report that Plaintiff was seen by the nurse after complaining of a rash on her neck that itched. (Tr. 287-289). Plaintiff reported that she worked in the kitchen, and that her neck really itched when she sweated. Plaintiff was diagnosed with dermatitis and prescribed topical hydrocortisone. Plaintiff was to request a sick call if her symptoms did not improve in three days.

ADC medical notes dated January 3, 2008, report that Plaintiff was seen by the nurse because she had a lump behind her ear and a possible ingrown pimple on the front part of her ear. (Tr. 285-286). After observing an irregular shaped area on Plaintiff's ear, Plaintiff was referred to the physician.

ADC medical notes dated January 5, 2008, report that Plaintiff was seen by the nurse after complaining of pain caused by the sore on her ear. (Tr. 292-293). The nurse noted that Plaintiff had a minor injury and pain and prescribed Acetaminophen.

ADC medical notes dated January 6, 2008, report that Plaintiff was seen by the nurse after complaining of swelling of a hair follicle with pain. (Tr. 294-295, 299). Plaintiff was diagnosed with "boils' and prescribed medication. Plaintiff was to return if the area did not begin to drain.

On March 25, 2008, Plaintiff underwent a consultative general physical examination performed by Dr. Randy Duane Conover. (Tr. 310-315). Plaintiff complained of back and bilateral knee pain. Plaintiff reported that she smoked one-fourth of a package of cigarettes a day. Upon examination of Plaintiff's spine and extremities, with the exception of limitation in the flexion of Plaintiff's right knee and lumbar spine, Plaintiff had normal range of motion in these areas. Dr. Conover found no presence of muscle spasm and negative straight leg tests,

-5-

bilaterally.  Plaintiff exhibited no muscle weakness or atrophy, but Dr. Conover noted that Plaintiff limped on the right.  Upon a limb function evaluation, Dr. Conover reported Plaintiff was able to hold a pen and write; to touch fingertips to palm; to grip 90% of normal; to oppose thumb to fingers; to pick up a coin; to stand and walk without assistive devices; to walk on heel and toes; and to squat and arise from a squatting position.  Dr. Conover's notes indicated that he reviewed Plaintiff's MRI of the spine dated May 5, 2004.  (Tr. 245).  Dr. Conover noted Plaintiff was oriented to time, person, and place and that he saw no evidence of psychosis.  Plaintiff was diagnosed with spondylolithesis of the anterior lumbar spine; osteoarthritis; and depression.  Dr. Conover opined Plaintiff could handle, finger, see, hear and speak; that Plaintiff was moderately limited in her ability to walk and stand; and that Plaintiff was severely limited in her ability to lift and carry.

On March 31, 2008, Dr. Bill F. Payne, a non-examining medical consultant, completed a RFC assessment stating that Plaintiff could occasionally lift or carry twenty pounds, frequently ten pounds; could stand and/or walk for about six hours in an eight-hour workday; could sit for a total of about six hours in an eight-hour workday; and could push or pull unlimited, other than as shown for lift and/or carry.  (Tr. 319-326).  Dr. Payne noted that postural, manipulative, visual, communicative or environmental limitations were not evident.

On March 31, 2008, Plaintiff underwent a consultative mental diagnostic evaluation performed by Dr. Terry L. Efird.  (Tr. 347-351).  Plaintiff reported that she had applied for disability due to her depression and short-term memory loss.  Plaintiff reported feeling worthless and she endorsed excessive worry about getting a job.  Plaintiff denied a history of psychiatric treatment, but reported having been prescribed Lexapro by a free clinic.  Plaintiff reported that

-6-

she took Lexapro as prescribed and denied experiencing side effects. Dr. Efird noted that Plaintiff lived with a friend and her three children since being out of "boot camp" for the past two months. Plaintiff reported the ability to do most activities of daily living satisfactorily. Dr. Efird noted that Plaintiff was neat and clean, and that Plaintiff drove herself to the evaluation. After evaluating Plaintiff, Dr. Efird diagnosed Plaintiff with major depressive disorder, moderate; and a generalized anxiety disorder. Plaintiff was given a GAF score of 55-65. Dr. Efird estimated Plaintiff's intellectual functioning to be in the low average range.

With regard to adaptive functioning, Dr. Efird noted Plaintiff reported the ability to drive unfamiliar routes; however, she also reported having some problems with directions. Plaintiff reported that she could shop independently; however, Plaintiff also reported that since being out of prison, a friend had gone shopping with her because Plaintiff sometimes felt like people were watching her. Plaintiff reported she interacted with the family that she lived with, and went to church. Dr. Efird opined that Plaintiff had the capacity to perform basic cognitive tasks; that Plaintiff completed most tasks within an adequate time frame; and that Plaintiff's pace would be fairly consistent with her estimated intellectual functioning.

On April 3, 2008, Plaintiff was seen at the Community Clinic due to her nausea, vomiting and diarrhea. (Tr. 335-337). Clinic notes indicated that Plaintiff had been in jail for nine months, and that she had lost weight while incarcerated. Plaintiff's breathing was noted as okay overall but Plaintiff wanted an inhaler prescription refill. Plaintiff also reported some depression and that Lexapro had helped her in the past. Plaintiff's physical examination was within normal limits. Plaintiff was diagnosed with gastroenteritis, depression, and asthma. Plaintiff was prescribed Phenergan, Lexapro and Albuterol.

-7-

On April 4, 2008, Dr. Brad F. Williams, a non-examining medical consultant, completed a Psychological Review Technique Form (PRTF) and opined that Plaintiff had a severe mental impairment.  (Tr. 354-367).  Dr. Williams opined Plaintiff had mild restrictions of her activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration persistence or pace; and no repeated episodes of decompensation, each of extended duration.  Dr. Williams stated the following:

> This 47 y/o alleges physical impairments only, but at GPCE, she was dx'ed w/depression.  MSCE dx'ed MDD, mod and GAD, but suggested that her clinical presentation did not appear as impaired as the # and severity of reported sx's would suggest.  MS was WML, and ADL's appear to be impacted only by her physical impairments.  CL is given a semi-skilled RFC.

(Tr. 366).

On the same date, Dr. Williams completed a mental RFC assessment stating Plaintiff had moderate limitations in the following areas: the ability to maintain attention and concentration for extended periods; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to accept instructions and respond appropriately to criticism from supervisors; and the ability to set realistic goals or make plans independently of others.  (Tr. 368-371). Dr Williams stated as follows:

> the claimant is able to perform work where interpersonal contact is routine but superficial, e.g. grocery store clerk; complexity of task is learned by experience; several variables, uses judgment with limits; supervision required is little for routine but detailed for non-routine.

(Tr. 370).  On May 29, 2008, after reviewing all of the evidence of record, Dr. Paula Lynch affirmed the assessment dated April 4, 2008.  (Tr. 378).

-8-

On April 23, 2008, Plaintiff was seen at the Community Clinic due to lower back pain around the kidney area, a low grade fever, and cloudy urine. (Tr. 330-334). Plaintiff underwent a urine analysis. Plaintiff was prescribed an antibiotic.

On June 3, 2008, after reviewing all of the evidence of record, Dr. Jim Takach affirmed Dr. Payne's March 31, 2008 assessment. (Tr. 377). Dr. Takach made the following comments:

> 47 yo with a hx of LBP - imaging(+) for LS DDD and Spondylolisthesis - clinical exams: myofascial pain w/o NM loss - (I)slightly antalgic gait - conservative Rx - added hx of obesity (BMI-42) - at recon: Rx for mild asthma - overall - NO change in status - therefore - after review of the MER in the file- the assessment of 3/31/2008 is affirmed for residual functional status.

(Tr. 377).

By letter dated October 12, 2009, Plaintiff's counsel submitted additional evidence to the Appeals Council. (Tr. 211). The additional medical evidence was a MRI of the lumbar spine dated June 22, 2009. (Tr. 379-382). The MRI revealed the following:

> 1. L5-S1 grade 1 spondylolisthesis with high-grade or foraminal stenosis as the dominant feature.
> 2. L3-4 foraminal narrowing, due to right far lateral disk protrusion.
> 3. L4-5 moderate biforaminal narrative facet hypertrophy.
> 4. Lobulated, 8-cm diameter, fluid/fact, signal, mass in the right adnexa, for which benign dermoid cyst is favored.
> 5. 2.4 diameter, intramural uterine mass arising from the posterior fundus of the uterus, consistent with benign leiomyoma formation.

(Tr. 382).

## III.   Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind

AO72A
(Rev. 8/82)

would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3), 1382(3)(c).  A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal

-10-

an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience.  See 20 C.F.R. §§ 404.1520, 416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity.  See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

## IV.   Discussion:

Plaintiff contends that the ALJ erred in concluding that the Plaintiff was not disabled. Defendant argues substantial evidence supports the ALJ's determination.

### A.   Insured Status:

In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability.  42 U.S.C. § 416(i)(3)(B). Plaintiff last met this requirement on June 30, 2007.  Regarding Plaintiff's application for DIB, the overreaching issue in this case is the question of whether Plaintiff was disabled during the relevant time period of June 20, 2007, her amended alleged onset date of disability, through June 30, 2007, the last date she was in insured status under Title II of the Act.

In order for Plaintiff to qualify for DIB she must prove that, on or before the expiration of her insured status, she was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death.  Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir. 1984).  The medical evidence of Plaintiff's condition subsequent to the expiration of Plaintiff's insured status is relevant only to the extent it helps establish Plaintiff's condition before the expiration.  Id. at

AO72A
(Rev. 8/82)

1169.

**B.    Subjective Complaints and Credibility Analysis:**

We now address the ALJ's assessment of Plaintiff's subjective complaints.  The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to:  (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  Id.  As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly evaluated Plaintiff's subjective complaints.  Although Plaintiff contends that her impairments were disabling, the evidence of record does not support this conclusion.

With regard to Plaintiff's back, the ALJ noted that the record revealed that Plaintiff did not seek consistent treatment for her alleged disabling back impairment.  See Novotny v. Chater, 72 F.3d 669, 671 (8th Cir. 1995) (per curiam) (failure to seek treatment was inconsistent with allegations of pain).  The ALJ pointed out that while Plaintiff was incarcerated from June of 2007, through February of 2008, Plaintiff did not seek treatment for her alleged back pain.  It is also noteworthy that after Plaintiff was released in February of 2008, Plaintiff did seek treatment

-12-

at the Community Clinic for nausea, vomiting, diarrhea and symptoms associated with a urinary tract infection. Plaintiff did not, however, seek treatment for her allegedly disabling back pain. The record further reveals that Plaintiff was not taking any prescription medication for her allegedly disabling pain. See Rankin v. Apfel, 195 F.3d 427, 430 (8th Cir. 1999) (infrequent use of prescription drugs supports discrediting complaints). The Court finds, based on the evidence recited above, that there is substantial evidence supporting the ALJ's finding that Plaintiff's back impairment was not disabling during the relevant time period. See Lawrence v. Chater, 107 F.3d 674, 676 (8th Cir. 1997) (upholding ALJ's determination that claimant was not disabled even though she had in fact sustained a back injury and suffered some degree of pain); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993) (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled).

With regard to Plaintiff's alleged knee impairment, the record revealed that Plaintiff sought treatment for her knee pain once while incarcerated. At that time, Dr. Bowler found no evidence of swelling or deformity and prescribed Ibuprofen. The medical evidence does not show that Plaintiff sought treatment for her alleged knee impairment after she was released in February of 2008. Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir.1997) (failure to seek medical assistance contradicts subjective complaints).

While Plaintiff alleged an inability to seek treatment due to a lack of finances, the record is void of any indication that Plaintiff had been denied treatment due to the lack of funds. Murphy v. Sullivan, 953 F.3d 383, 386-87 (8th Cir. 1992) (holding that lack of evidence that plaintiff sought low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of financial hardship). The record also revealed that Plaintiff was able to

-13-

come up with the funds to support her smoking habit.

As for Plaintiff's alleged depression, there is no medical evidence of record revealing that Plaintiff sought on-going and consistent treatment for her alleged mental impairments during the relevant time period.  See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against plaintiff's claim of disability).  Plaintiff also testified at the hearing the Lexapro was helping with her depression.  Brace v. Astrue, 578 F.3d 882, 885 (8th Cir. 2009) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.")(citations omitted).  After reviewing the entire evidence of record, the Court finds substantial evidence to support the ALJ's determination that Plaintiff does not have a disabling mental impairment.

Plaintiff's subjective complaints are also inconsistent with evidence regarding her daily activities.  The record revealed that in March of 2008, Plaintiff, who drove herself to the consultative evaluation, reported to Dr. Efird that she could perform most activities of daily living satisfactorily.  Plaintiff also reported that she interacted with the family that she lived with and that she went to church.  In a Function Report dated March 6, 2008, Plaintiff indicated that she did not do any household chores, but she indicated she was able to take care of her personal needs; that she spent her time reading and watching television; and that she was able to spend time sitting and talking with others.  (Tr.  161-168).  This level of activity belies Plaintiff's complaints of pain and limitation and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a Plaintiff's subjective allegations of disabling pain.  Hutton v. Apfel, 175 F.3d 651, 654-655 (8th Cir. 1999) (holding ALJ's rejection of claimant's application supported by substantial evidence where daily activities– making breakfast, washing dishes and

-14-

clothes, visiting friends, watching television and driving-were inconsistent with claim of total disability).

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, she has not established that she is unable to engage in any gainful activity. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

**B.     RFC Assessment:**

We next turn to the ALJ's assessment of Plaintiff's RFC. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

"It is the ALJ's function to resolve conflicts among 'various treating and examining physicians.'" Bentley v. Shalala, 52 F.3d 784, 787 (8th Cir. 1995). "[A] treating physician's opinion is given 'controlling weight' if it 'is well-supported by medically acceptable clinical and

-15-

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence.' " Dolph v. Barnhart, 308 F.3d 876, 878 (8th Cir.2002). A treating physician's opinion "do[es] not automatically control, since the record must be evaluated as a whole." Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir.1995).

In finding Plaintiff able to perform sedentary work with limitations, the ALJ considered Plaintiff's subjective complaints, the medical records of her treating and examining physicians, and the evaluations of the non-examining medical examiners.

Plaintiff argues that the ALJ sought no alternative opinion when he discounted Dr. Kilgore's May of 2005 assessment that Plaintiff had the following permanent restrictions: no lifting, pulling, or pushing items over twenty pounds; no prolonged periods of standing, sitting and walking; and no bending, stooping or twisting; and that the ALJ simply imposed his own opinion as to Plaintiff's limitations.   In determining Plaintiff's RFC, the ALJ stated that he did not give Dr. Kilgore's opinion significant weight because Dr. Kilgore's treatment history with Plaintiff was brief (April 2004 until July 2004).  The ALJ also pointed out that Dr. Kilgore's opinion was rendered two years prior to the alleged onset date, and that there was no evidence that Plaintiff sought continued treatment for her back pain or that she underwent surgery.

In finding Plaintiff could do sedentary work, the ALJ used the March of 2008 opinion of Dr. Conover, who examined Plaintiff prior to opining as to Plaintiff's limitations due to her impairments.  Dr. Conover not only examined Plaintiff, he reviewed the medical evidence which included the opinion of Dr. Kilgore, as well as the May 2004 MRI that Dr. Kilgore used to give his opinion.  After examining Plaintiff and her medical records, Dr. Conover opined that Plaintiff could handle, finger, see, hear and speak; that Plaintiff was moderately limited in her ability to

AO72A
(Rev. 8/82)

walk and stand; and that Plaintiff was severely limited in her ability to lift and carry.   The ALJ also used the opinion of the non-examining medical professionals, as well as the opinion of Dr. Anderson who opined in June of 2007 that Plaintiff should avoid prolonged crawling; that Plaintiff was restricted from assignments requiring prolonged crawling, stooping, running, jumping, walking, or standing; and that Plaintiff should avoid strenuous activity, and restricted Plaintiff from performing any assignment requiring strenuous physical activity for periods in excess of fours hours.

As for Plaintiff's obesity, the Court notes that Plaintiff did not allege obesity in her application and did not testify to any limitations caused by her obesity at the administrative hearing. See Thompson v. Astrue, 226 Fed. Appx. 617, 620 (8th Cir.2007) (holding that the ALJ did not err in failing to obtain the testimony of a VE  where the claimant failed to claim obesity as a disabling condition).

Based on our above discussion of the medical evidence and Plaintiff's activities throughout the relevant time period, the Court finds substantial evidence of record to support the ALJ's RFC determination.

### D. Hypothetical Question to the Vocational Expert:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the vocational expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing work  in assembly production, and

-17-

as a hand packer/packager . <u>Pickney v. Chater</u>, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

## V.     <u>Conclusion:</u>

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed.  The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 15th day of May, 2012.


/s/ *Erin L. Setser*
_____
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)